# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Delvin Jackson (N-50583), ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16-cv-11581 |
| v. ) | |
| ) | Hon. Franklin U. Valderrama |
| James S. Holmes, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Delvin Jackson (Jackson) initiated this *pro se* civil rights action under 42 U.S.C. § 1983 based on alleged events at the Cook County Jail in 2016 when he was a pretrial detainee. R. 1, Compl.[1] Defendants have moved to dismiss pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). R. 80, Mot. Dismiss. Defendants' motion to dismiss is granted in part and denied in part. Jackson's excessive force claims against Lieutenant Holmes and Officers Stroner, Kelly, and Cocluti based on events that allegedly occurred after Holmes deployed pepper spray, as well as Plaintiff's related failure to intervene claims against Officers Williams and Warniczek remain pending.

## Background

Delvin Jackson, an Illinois prisoner, initiated this *pro se* civil rights action under 42 U.S.C. § 1983 based on alleged events at the Cook County Jail in 2016 when he was a pretrial detainee. In Jackson's complaint, he alleges that when he returned

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

to his cell after a search on March 16, 2016, some of his property was missing. Compl. at 6. He complained to Lieutenant Holmes, who ordered him to "lock the (F) up." *Id.* at 6–7. After Jackson asked Lieutenant Holmes if he could speak to someone else, Lieutenant Holmes "sprayed [Jackson] in the face [with mace] for no reason." *Id.* at 7. Lieutenant Holmes and other officers then dragged Jackson off-camera. *Id.* Officer Stoner grabbed Jackson's waist and "slammed him on the floor" as Officer Cocluti held Jackson's head in a chokehold while Officers Stroner and Kelly grabbed Jackson's arms as they pressed their knees into Jackson's sides and Stroner "[tried] to break [Jackson's] arm." *Id.* Lieutenant Holmes "punched" Jackson in the head "about two times" and then punched Jackson's back and sides. *Id.* In the meantime, Officers Williams and Warniczek grabbed Jackson's feet and "threw some shackles" on him. *Id.*

Based on these allegations, the Court allowed Jackson to proceed with excessive force claims against Lieutenant Holmes and Officers Stroner, Kelly, and Cocluti and failure to intervene claims against Officers Williams and Warniczek. R. 5. Defendants moved for a stay pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), because Jackson had been charged with aggravated battery of a peace/correctional officer under 720 Ill. Comp. Stat. § 5/12-3.05. R. 12. The Court stayed proceedings in this case pending disposition of Jackson's state criminal proceedings (R. 14), which ended with a conviction and a sentence of twelve years of incarceration. After Jackson unsuccessfully challenged his sentence before the Illinois Appellate Court, the Illinois Supreme Court denied his petition for leave to appeal. *See* Mot. Dismiss. at 1–2.

[2]

The Illinois Appellate Court's opinion contains a summary of the evidence presented during Jackson's bench trial:

> ¶ 3 At trial, Sergeant Troy Smith of the Cook County Sheriff's Department testified that on March 23, 2016, he conducted a sweep of inmate cells for contraband at the Division 11 jail. Later, [Jackson], an inmate, approached Smith and Lieutenant James Holmes, who was also in the area, and said something was missing from his cell. [Jackson] was "irritated" and refused to reenter his cell. Instead, he "grabbed" a broom and "attempted to swing" it at Holmes, who deployed "OC Spray." [Jackson] then "charged towards" Holmes, and several officers and a supervisor assisted by taking [Jackson] to the ground and handcuffing him.
>
> ¶ 4 Holmes testified that he noticed [Jackson] arguing with Smith, told them to "stop," and instructed [Jackson] to enter his cell. [Jackson] refused, and instead swore at Holmes and grabbed the broom. Holmes deployed OC Spray towards [Jackson], but [Jackson] still attacked Holmes with the broom, striking him in the upper arm and shoulder. Holmes did not suffer any visible injuries, but was sore the next day. The State introduced video of the incident at trial, which is included in the record on appeal and consistent with Holmes's testimony.
>
> ¶ 5 On cross-examination, Holmes stated that he grabbed the broom after [Jackson's] third swing and snapped it. Holmes did not swing the broom at [Jackson]. Other inmates had complained about Holmes using excessive force in previous incidents.
>
> ¶ 6 [Jackson] testified that he returned to his cell from recreation and found it in "disarray." He exited the cell and asked to speak with Holmes, who turned and asked defendant "what the F" he wanted. [Jackson] then asked Holmes to speak with the sergeant, but Holmes refused and told [Jackson] to return to his cell. When [Jackson] did not reenter his cell and again asked if he could speak to a sergeant, Holmes sprayed [Jackson] with mace. [Jackson] responded by picking up "the stick" and swinging it at Holmes. On cross-examination, [Jackson] denied that he was upset prior to the incident. He admitted he did not comply when Holmes told him to reenter his cell, but denied speaking to Smith prior to the incident.

*People v. Jackson*, No. 1-19-1690, 2020 WL 7873489, at *1 (Ill. App. Ct. Dec. 31, 2020)

[3]

(unpublished opinion). "Multiple officers were needed to subdue [Jackson]." *Id.* at *2.

After this Court lifted the stay (R. 79), Defendants moved to dismiss Jackson's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing that given his conviction, *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), and the doctrine of collateral estoppel bar all of his constitutional claims. Mot. Dismiss. Jackson's response repeats the allegations from his Complaint. R. 82, Resp. Jackson also claims that Sergeant Smith and Lieutenant Holmes committed perjury when they testified in his state court criminal case and asserts that he "did not batter" Holmes and that Holmes used pepper spray "before [Jackson] reacted to [Holmes'] malicious assault." *Id.* at 3.

## Standard of Review

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must include "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), so the defendant receives "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Id.* at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts Jackson's well-pleaded factual allegations as true and draws all reasonable inferences in his favor. *Smith v. City of Chicago*, 3 F.4th 332, 334 n.1 (7th Cir. 2021). In addition, because Jackson is proceeding *pro se*, the

Court construes his complaint liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

## Analysis

### I. *Heck v. Humphrey*

In *Heck*, the Supreme Court held that a § 1983 claim cannot proceed if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction . . . unless the plaintiff can demonstrate that the conviction . . . has already been invalidated." 512 U.S. at 487. This means that Jackson may not pursue a § 1983 claim if success on that claim would necessarily imply that his conviction for aggravated battery to a peace/correctional officer (Lieutenant Holmes) in violation of 720 Ill. Comp. Stat. § 5/2-12-3.05(d)(4) is invalid.

A "version of events [that] negates the mental state necessary to support [a] conviction for aggravated battery of a peace officer . . . necessarily implies the invalidity of [a § 1983 plaintiff's] conviction." *Tolliver v. City of Chicago*, 820 F.3d 237, 244 (7th Cir. 2016). Given Jackson's conviction for aggravated battery, he may not proceed with an excessive force claim based on his contention that he "did not batter" Lieutenant Holmes and was, instead, the victim because Holmes "sprayed [him] in the face [with mace] for no reason." *See Johnson v. Reiter*, No. 14 C 1522, 2015 WL 6674531, at *4–5 (N.D. Ill. Oct. 30, 2015) (collecting cases holding that *Heck* bars excessive force claims that are inconsistent with underlying state court convictions).

This leaves Jackson's allegations that Lieutenant Holmes and Officers Stroner, Kelly, and Cocluti used excessive force after he hit Lieutenant Holmes with the broom

[5]

and that Officers Williams and Warniczek failed to intervene. The Illinois Appellate Court's findings about events after Jackson's initial interaction with Lieutenant Holmes are limited to noting that "several officers and a supervisor assisted by taking [Jackson] to the ground and handcuffing him" after Lieutenant Holmes attempted to subdue Jackson with pepper spray. *Jackson*, 2020 WL 7873489, at *1. Later in its order, the Illinois Appellate Court repeats that "[m]ultiple officers were needed to subdue [Jackson]." *Id.* at *2. Jackson's allegations concerning this time period are more expansive, as he says that after he engaged with Lieutenant Holmes, he was taken off-camera and before he was handcuffed: (1) Officer Stroner grabbed his waist and "slammed" him on the floor; (2) Officer Cocluti placed his head in a choke-hold; (3) Officers Stroner and Kelly grabbed his arms and pressed their knees into his sides; (4) Officer Stroner tried to break his arms; and (5) Lieutenant Holmes punched him on his head, back, and sides. Compl.; Resp.

Defendants argue that the need to subdue Jackson after his initial interaction with Lieutenant Holmes means that Jackson's allegations about the use of force before he was handcuffed are inconsistent with the state court's finding that he had to be taken down by multiple correctional staffers. Mot. Dismiss at 8–9. The Court, however, cannot come to that conclusion based on the current record. Jackson's offense of conviction required him to "know[] the individual battered [Lieutenant Holmes] to be . . . a peace officer . . . [or] correctional institution employee . . . performing his or her duties; battered to prevent performance of his or her duties; or battered in retaliation for performing his or her official duties." 720 Ill. Comp. Stat.

[6]

§ 5/12-3.05(d)(4). Even if Jackson hit Lieutenant Holmes with a broom despite the use of pepper spray and needed to be subdued, Lieutenant Holmes and the other officers could have used constitutionally excessive force while doing so, as Jackson claims. *See Hardrick v. City of Bolingbrook*, 522 F.3d 758, 764 (7th Cir. 2008) ("The fact that [plaintiff] 'struggled while being handcuffed' at one point in time does not preclude the possibility that at another point in time, [he] was 'peaceably waiting to be handcuffed.'"); *Gilbert v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008) ("*Heck* . . . do[es] not affect litigation about what happens after the crime is completed. Public officials who use force reasonably necessary to subdue an aggressor are not liable on the merits; but whether the force was reasonable is a question that may be litigated without transgressing *Heck*."); *see also Douglas v. Vill. of Palatine*, No. 17 C 6207, 2021 WL 979156, at *3 (N.D. Ill. Mar. 16, 2021) (noting that a conviction for aggravated assault does not always bar a § 1983 claim based on a plaintiff's allegation that the "the assaulted officer used unreasonable force in effectuating his arrest"); *Hemphill v. Hopkins*, No. 08 CV 157, 2011 WL 6155967, at *2 (N.D. Ill. Dec. 12, 2011) ("Settled precedent is clear: *Heck* does not bar an excessive force claim if the plaintiff, putting aside any challenge to his conviction, proceeds on the theory that the degree of force applied was unreasonable under the circumstances.").

Defendants attempt to avoid this result by contending that Jackson's "entire complaint stems from [his] criminal act of aggression foreclosing any theoretical non-*Heck* barred allegations." Mot. Dismiss at 8. This is incorrect. *See Gilbert v. Cook*, 512 F.3d 899, 902 (7th Cir. 2008) ("An argument along the lines of 'The guards violated

[7]

my rights by injuring me, whether or not I struck first' does not present the sort of inconsistency that [requires application of the *Heck* doctrine]."); *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006) ("As a general proposition, a plaintiff who has been convicted of resisting arrest or assaulting a police officer during the course of an arrest is not per se *Heck*-barred from maintaining a § 1983 action for excessive force stemming from the same confrontation"); *Gregory v. Oliver*, 226 F. Supp. 2d 943, 952 (N.D. Ill. 2002) (any "one-to-one correlation between (1) a conviction for resisting arrest or aggravated assault and (2) the absence of a viable claim of excessive force is simply nonexistent" since "an officer's unjustified imposition of excessive force in an overreaction to an arrestee's assault, or the imposition of excessive force after the event that led to a resisting-arrest conviction" do not contradict events underlying the plaintiff's conviction).

Thus, Defendants' motion to dismiss Jackson's excessive force claims against Lieutenant Holmes and Officers Stroner, Kelly, and Cocluti based on events that allegedly occurred after Holmes deployed pepper spray is denied. *See Mordi v. Zeigler*, 870 F.3d 703, 708 (7th Cir. 2017) ("[E]ven if Mordi filed a complaint that included some *Heck*-barred contentions and other cognizable arguments, we have held that the proper response is not to toss the entire complaint. Instead, the judge must carve off any *Heck*-barred contentions and proceed with what remains."). This is not to say that the Court would reach the same conclusion on a more fully developed record. However, at this time, Jackson's conviction for aggravated battery does not establish that his excessive force claims based on subsequent events are *Heck*-barred.

[8]

## II. Collateral Estoppel

This brings the Court to Defendants' fallback argument: even if *Heck* does not bar all of Jackson's claims, any remaining claims should be dismissed based on the doctrine of collateral estoppel. Mot. Dismiss at 9–11. In Illinois, collateral estoppel bars re-litigation of an issue if: "(1) the party against whom the estoppel is asserted was a party to the prior adjudication, (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, (3) the resolution of the particular issue was necessary to the court's judgments, and (4) those issues are identical to issues raised in the subsequent suit." *Wells v. Coker*, 707 F.3d 756, 761 (7th Cir. 2013) (citations omitted). The burden is on the party asserting collateral estoppel to establish each element. *McDonald v. Adamson*, 840 F.3d 343, 347 (7th Cir. 2016) ("Because collateral estoppel is a distinct affirmative defense, defendants bore the burden to raise it in the district court and show that its application is clear on the face of [plaintiff's] complaint.").

Here, the first element is not at issue: there is no question that Jackson was a party to the underlying state criminal proceedings. *See* Resp. at 3. It is the second element that forms the crux of the dispute. Defendants maintain that at his bench trial, Jackson testified and argued self-defense, but was nonetheless found guilty of aggravated battery. Mot. Dismiss at 10. Therefore, reason Defendants, the issue of excessive force was previously adjudicated. *Id.* The Court, however, cannot jump to this conclusion, as the record contains no evidence from which the Court can determine that the issues presented by Jackson's excessive force claims against

[9]

Lieutenant Holmes and Officers Stroner and Cocluti—*i.e.,* the reasonableness of their non-*Heck*-barred conduct—were actually litigated in Jackson's state criminal proceedings. Instead, all the Court can discern is that the state court found that "several officers and a supervisor" assisted Lieutenant Holmes "by taking [Jackson] to the ground and handcuffing him" and that "[m]ultiple officers were needed to subdue [Jackson]." *Jackson*, 2020 WL 7873489, at *1, *2. For the reasons discussed above, it is possible that the officers permissibly subdued Jackson, but it is also possible that they also applied gratuitous and unreasonable force. The Court, of course, makes no findings of fact since Defendants chose to file a motion to dismiss rather than a motion for summary judgment, and thus did not present any evidence. But for now, Defendants have failed to establish two collateral estoppel elements: that the issues purportedly supporting estoppel were (1) actually litigated and decided on the merits in Jackson's state criminal proceedings and (2) are identical to the issues presented in this case.

Thus, the Court cannot find that Jackson is collaterally estopped from pursuing excessive force claims against Lieutenant Holmes and Officers Stroner, Kelly, and Cocluti based on the non-*Heck*-barred events he describes. This leaves Officers Williams and Warniczek; the survival of a subset of Jackson's excessive force claims means that neither *Heck* nor collateral estoppel bar his failure to intervene claims. *See Bandala-Martinez v. Fry*, No. 3:15-CV-752-GCS, 2020 WL 1915275, at *4 (S.D. Ill. Apr. 20, 2020).

## Conclusion

[10]

For the foregoing reasons, Defendants' motion to dismiss [80] is granted in part and denied in part. Specifically, Jackson's excessive force claim against Lieutenant Holmes based on the use of pepper spray is dismissed without prejudice to Jackson's ability to initiate another civil rights lawsuit under 42 U.S.C. § 1983 if and when his conviction is invalidated. Jackson's excessive force claims against Lieutenant Holmes and Officers Stroner, Kelly, and Officer Cocluti based on events that allegedly occurred after Lieutenant Holmes deployed pepper spray, as well as Jackson's related failure to intervene claims against Officers Williams and Warniczek, survive the motion to dismiss and remain pending. The parties are instructed to file a joint status report on or before November 30, 2021. The parties are strongly encouraged to discuss resolution of this matter and should indicate the status of settlement efforts in the joint status report. The parties should also indicate whether the incident is memorialized on video. The Court refers discovery supervision, including setting all deadlines, and settlement matters to Magistrate Judge McShain.

Dated: November 12, 2021

United States District Judge
Franklin U. Valderrama

[11]